UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCOCO STEAK, LLC,

    Plaintiff,

v.                   Case No. 8:20-cv-2481-VMC-SPF

ASPEN SPECIALTY INSURANCE
COMPANY,

    Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to the Motion to Dismiss for Failure to State a Claim (Doc. # 15), filed by Defendant Aspen Specialty Insurance Company on November 18, 2020. Plaintiff Rococo Steak, LLC responded in opposition on December 18, 2020. (Doc. # 26). For the reasons set forth below, the Motion is granted.

## I.  Background

Plaintiff Rococo Steak, LLC, is the owner of Rococo Steak, a fine dining restaurant in St. Petersburg, Florida. (Doc. # 1-3 at ¶ 1). Effective from October 17, 2019, through October 17, 2020, Rococo purchased a property insurance policy from Defendant Aspen Specialty Insurance Company. (Id. at ¶¶ 2-3).

Like many establishments, Rococo explains that it was forced to suspend business operations in 2020 due to the COVID-19 pandemic. (Id. at ¶ 9). Specifically, Rococo states that on March 20, 2020, the Governor of Florida issued Executive Order 20-71, which required all restaurants, bars, pubs, and similar establishments to close on-premises food service. (Id. at ¶ 41). On March 25, 2020, Pinellas County (where the restaurant is located) issued Emergency Order 20-20, which "required the closure of all non-essential businesses, including restaurants and bars, in compliance with Executive Order 20-71." (Id. at ¶ 42).

As a result of these orders, and the general "presence of COVID-19," Rococo claims it has "suffered a suspension of business operations, sustained losses of business income, and incurred extra expenses." (Id. at ¶¶ 44-46). Rococo sought coverage for these losses and expenses from Aspen under the following provisions of its insurance policy. (Id. at ¶ 50).

First, according to Rococo, business interruption coverage protects Rococo against the "loss of business income due to a suspension of the Restaurant's operations." (Id. at ¶ 5). The relevant portion of the business income clause states that:

> [Aspen] will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by **direct physical loss of or damage to property at premises** which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.

(Id. at 87) (emphasis added).

Second, according to Rococo, extra expense coverage "promise[s] to pay expenses incurred to minimize the suspension of business." (Id. at ¶ 6). The extra expense clause states:

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage** to property caused by or resulting from a Covered Cause of Loss.

(Id. at 87) (emphasis added).

Third, Rococo contends that civil authority coverage "promise[s] to pay for the loss of business income suffered by [Rococo] caused by the action of a civil authority prohibiting access to the restaurant." (Id. at ¶ 7). The civil authority clause, in relevant part, states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expenses caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority **as a result of the damage** and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to **dangerous physical conditions resulting from the damage** or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(<u>Id.</u> at 88) (emphasis added).

Rococo claims that its losses fall under these provisions, and thus should have been covered, because

> [t]he presence of COVID-19 caused direct physical loss of and/or damage to the covered premises under the Policy by, among other things, damaging the property, denying access to the property, preventing customers from physically occupying the property, causing the property to be physically uninhabitable by customers, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

(<u>Id.</u> at ¶ 44).

Alternatively, according to Rococo, "[t]he Civil Authority Actions prohibiting public access to the covered premises and the surrounding area were issued in response to dangerous physical conditions and damage, caus[ing] a suspension of business operations on the covered premises."

(<u>Id.</u> at ¶ 46).

4

Aspen denied coverage of the losses and expenses, leading Rococo to file this action in state court. (Id. at ¶ 51). In Count I of the complaint, Rococo requests declaratory judgment that its insurance policy covers these business losses. (Id. at ¶ 55). In Count II, Rococo requests damages for breach of contract based on Aspen's denial of its claims. (Id. at ¶ 70).

Aspen removed the case to federal court on the basis of diversity jurisdiction on October 23, 2020. (Doc. # 1). Aspen subsequently moved to dismiss both counts of the complaint for failure to state a claim. (Doc. # 15). Rococo responded (Doc. # 26) and the Motion is ripe for review.

## II. **Legal Standard**

### A. **Rule 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

citations omitted). Courts are not "bound to accept as true

a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

consideration to well-pleaded factual allegations, documents

central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358

F.3d 840, 845 (11th Cir. 2004).

### B. **Florida Contract Law**

This case was removed from state court on the basis of

diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. #

1). Therefore, the Court applies the substantive law of

Florida as the forum state. Mid-Continent Cas. Co. v. Am.

Pride Bldg. Co., 601 F.3d 1143, 1148 (11th Cir. 2010); Sphinx

Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 412

F.3d 1224, 1227 (11th Cir. 2005).

Under Florida law, interpretation of an insurance

contract is a matter of law to be decided by the court. Gulf

Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985). Florida law requires that the plain and unambiguous language of the policy controls. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). Only if the language is susceptible to more than one reasonable interpretation, "one providing coverage and the other limiting coverage," will the court resolve the ambiguity, construing the policy to provide coverage. Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005)). However, interpreting the contract language is necessary, and the act of interpreting does not impute ambiguity to its terms. Id. (citing Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 31 (Fla. 2d DCA 2004)).

## III. **Analysis**

Aspen moves to dismiss both counts of the complaint, arguing that the business income provision, extra expense provision, and civil authority provision of the insurance policy are all predicated on direct physical loss of or damage to property. (Doc. # 15 at 12). According to Aspen, all of Rococo's allegations "relate to purely economic losses without any corresponding physical loss or damage to the

7

covered property," thus the claims are precluded from coverage. (Id. at 13).

Rococo responds that Aspen is "confusing the term 'physical' with 'structural,'" but "those terms are not synonymous." (Doc. # 26 at 9, 13-14). Rococo argues that the definition of direct physical loss is broader than structural alteration of property, and physical loss "may take place even if the structure of covered property remains unchanged." (Id. at 14).

Rococo continues that even if physical loss requires structural alteration, the complaint adequately pleads structural alteration by alleging (1) physical contamination of the property by the virus and (2) diminishment and loss of functionality. (Id. at 16, 19).

Since the declaratory judgment claim (Count I) and the breach of contract claim (Count II) are both contingent on whether Rococo's losses were covered by the insurance policy, the Court addresses them simultaneously. For the reasons below, the Court agrees with Aspen that Rococo fails to show coverage under any provision of the insurance agreement.

A. **Business Income and Extra Expense Provisions**

Coverage under both the business income and extra expense provisions turns on whether COVID-19 caused direct

physical loss of or damage to the insured property. The business income clause explicitly states that the suspension of operations "[m]ust be caused by direct physical loss of or damage" to the insured property. (Doc. # 1-3 at 87). The extra expense clause likewise warns that it only covers necessary expenses that "would not have [been] incurred if there had been no direct physical loss or damage to [the] property." (Id.).

Notably, the insurance policy does not define "direct physical loss of or damage." However, the Eleventh Circuit recently adopted Florida's construction of direct physical loss as one requiring the loss be "actual" and representing the "diminution of value of something." Mama Jo's Inc. v. Sparta Ins. Co., 823 F. App'x 868, 879 (11th Cir. 2020)).

In Mama Jo's, an insured restaurant filed a claim for costs incurred to clean the restaurant and for loss of business income after debris and dust from nearby construction fell onto and into the restaurant. 823 F. App'x at 871-72. The restaurant remained open, but the dust reduced customer traffic and required extra cleaning. Id.

On appeal, the Eleventh Circuit affirmed the district court's finding that there was no direct physical damage or loss to the property. Id. at 879. The Eleventh Circuit noted

9

that, although dust and debris physically gathered on the property, "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" Id.

Following this precedent, courts in the Middle District have held that there must be "tangible damage to property for a 'direct physical loss' to exist." Prime Time Sports Grill, Inc. v. Dtw 1991 Underwriting Ltd., No. 8:20-cv-771-CEH-JSS, 2020 WL 7398646, at *6 (M.D. Fla. Dec. 17, 2020). Therefore, Rococo must allege "actual, concrete damage" to its property to fall within the insurance policy. Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000, No. 8:20-cv-1605-JSM-AEP, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020).

Rococo fails to allege such damage. Rococo argues that COVID-19 caused direct physical loss in two ways, but neither argument is persuasive.

### 1. Physical Contamination by the Virus

Rococo first argues that contamination by the COVID-19 virus physically altered its property by making surfaces dangerous to human health. (Doc. # 26 at 16). For support, Rococo cites cases where courts have held that "infestation of covered property by microscopic entities that are harmful

to human health constitutes 'direct physical loss or damage.'" (Id.). Rococo's examples include smoke infiltrating an outdoor theater, methamphetamine fumes permeating a home, and e. coli bacteria contaminating a well. (Id. at 19).

However, the cases cited in support of this argument originated outside the Eleventh Circuit. Rococo fails to squarely address the binding Mama Jo's precedent that the alleged damage be actual and physical. 823 F. App'x at 879. Like the restaurant in Mama Jo's, Rococo does not allege that COVID-19 required removal or replacement of any property or items in the insured restaurant. Id. Rather, like the coating of dust and debris in Mama Jo's, the surfaces allegedly contaminated by COVID-19 seem to only require cleaning to fix. Id.

The Eleventh Circuit has unambiguously held that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" Id. Therefore, Rococo cannot allege direct physical loss by claiming its property was superficially contaminated with COVID-19 particles. See Edison Kennedy, 2021 WL 22314, at *7 ("As in Mama Jo's and the cases thereafter, the necessity of cleaning the property to remove particles resting on the

property does not mean the property suffered direct physical damage or loss.").

## 2. **Impairment of functionality**

Nor is the Court persuaded by Rococo's second argument that it sustained direct physical loss when the restaurant's habitability and functionality were impaired. (Doc. # 26 at 19-21). Rococo points out that due to government ordinances on COVID-19, the restaurant was forced to close all on-site consumption. According to Rococo, courts have "routinely held that properties sustained 'direct physical loss or damage' when they lose habitability or functionality." (Id. at 21).

Although Rococo cites cases from outside the Eleventh Circuit that support this proposition, courts in the Eleventh Circuit have overwhelmingly rejected Rococo's argument. See Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co., No. 1:20-CV-22833, 2020 WL 6392841, at *5 (S.D. Fla. Nov. 2, 2020) (holding that economic losses caused by COVID-19 business closures or suspensions are not direct physical losses and listing cases).

On the contrary, courts in Florida have routinely applied Mama Jo's to find that a decrease in business due to COVID-19 is a purely economic loss, not the kind of physical loss contemplated by insurance policies. See Edison Kennedy,

12

2021 WL 22314, at *5 (listing cases and noting that "[o]ther federal district courts in Florida, after Mama Jo's was decided, have applied the requirement that the damage or loss to property must be both 'direct' and 'physical' under the terms of similar policies in COVID-19 pandemic cases").

For example, in Infinity Exhibits, Inc., a trade show was forced to shut down due to COVID-19 and sought coverage under a business interruption clause. The court dismissed the case, finding that the cancellation was an economic loss and the plaintiff failed to plead any tangible or physical loss. See 2020 WL 5791583, at *4. (noting that "impaired use or value cannot substitute for physical loss or damage"). The court continued:

> Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage.

Id. at *3.

More recently, in Prime Time Sports Grill, a restaurant was ordered to close due to COVID-19. As a result, the restaurant alleged that it lost $30,000 in net profit and $120,000 in operating expenses over a two-month period. 2020

WL 7398646. The restaurant sought coverage under a business interruption clause, but the court held that the loss was a purely economic one, and that the restaurant failed to allege "any tangible damage whatsoever." Id. at *6.

The Court finds these decisions instructive. Like the trade show in Infinity Exhibits, Inc. and the restaurant in Prime Time Sports Grill, Rococo claims it was forced to shut down normal business operations due to COVID-19. Under binding Eleventh Circuit precedent, this kind of loss is purely economic in nature, not physical. Therefore, Rococo cannot show coverage under the business income provision or the extra expenses provision, which both require "direct physical loss or damage" to the insured property. (Doc. # 1-3 at 87).

## B. **Civil Authority Provision**

Rococo fails to allege coverage under the civil authority provision for substantially the same reasons. The civil authority clause is only triggered when "a Covered Cause of Loss causes **damage to property** other than [the insured] property." (Doc. # 1-3 at 88) (emphasis added). Insured property is covered if: (1) an action of civil authority is taken "in response to **dangerous physical conditions resulting from the damage**," and (2) "[a]ccess to the area immediately

14

surrounding the damaged property is **prohibited** by civil authority as a result of the damage, and the [insured premises] are within that area but are not more than one mile from the damaged property." (Id.) (emphasis added).

As discussed above, neither physical contamination by COVID-19 nor a decrease in business constitutes direct physical loss or damage. Rococo thus fails to show how other properties in the surrounding area were "damaged" by COVID-19 or how the actions of civil authority were authorized in response to "dangerous physical conditions." See Edison Kennedy, 2021 WL 22314, at *7 (dismissing with prejudice a case where insured restaurants sought coverage under a civil authority provision, but only alleged that the other property had to be disinfected and cleaned due to COVID-19).

Rococo also fails to show how the actions of civil authority prohibited access to the restaurant. Although the Governor's order barred all on-site consumption, both delivery and take-out were available to Rococo's customers. (Doc. # 15 at 11; Doc. # 1-3 at ¶ 41). Other courts in Florida have held that access is not "prohibited" where customers can still purchase delivery or take-out. See Raymond H Nahmad, 2020 WL 6392841, at *5 (dismissing with prejudice two cases in which the insured sought coverage under a civil authority

15

provision, finding that access was not prohibited where take-out and delivery were available); El Novillo Rest. v. Certain Underwriters at Lloyd's, London, No. 1:20-CV-21525-UU, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (same).

The cited actions of civil authority did not completely cut off access to the restaurant, nor did they specifically prohibit customers from purchasing delivery or take-out. "[M]erely restricting access to [Rococo's] business, without completely prohibiting access, 'does not trigger coverage under the [] Civil Authority provision.'" Raymond H Nahmad, 2020 WL 6392841, at *9.

Rococo fails to allege either damage to surrounding property or that the actions of civil authority prohibited access to the restaurant. Therefore, Rococo fails to show coverage under the civil authority provision.

C. **Conclusion**

Like other courts in this district, this Court is sympathetic to the economic losses suffered as a result of the COVID-19 pandemic. But "there is simply no coverage [for loss of business due to COVID-19] under policies if [the policies] require 'direct physical loss of or damage' to property." Infinity Exhibits, Inc., 2020 WL 5791583, at *5.

Here, "considering the plain language of the [policy] . . . the underlying litigation is unequivocally excluded from coverage," therefore Rococo's claims are properly dismissed under Fed. R. Civ. P. 12(b)(6). See Zodiac Group, Inc. v. Axis Surplus Ins. Co., 542 F. App'x 844 (11th Cir. 2013) (holding that district court properly granted insurer's motion to dismiss breach of contract and declaratory judgment claims because plain language of the policy precluded coverage for the underlying claim).

It appears to the Court that any amendment would be futile based on the facts and circumstances of this case. As such, the dismissal is with prejudice. See Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) ("The district court, however, need not 'allow an amendment . . . where amendment would be futile.'") (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Aspen's Motion to Dismiss for Failure to State a Claim (Doc. # 15) is **GRANTED.**

(2)  This case is dismissed with prejudice.

(3)  The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of January, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE